UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARGO CARRIS,
                              Plaintiff,              5:13-CV-0923
                                                      (GTS/ATB)
v.

FIRST STUDENT, INC.,
                              Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

MARGO CARRIS
   Plaintiff, *Pro Se*
217 W. Lafayette Ave.
Syracuse, New York 13205

LITTLER MENDELSON, P.C.                       IVAN R. NOVICH, ESQ.
   Counsel for Defendant
One Newark Center
8th Floor
Newark, New Jersey 07102

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this *pro se* employment discrimination action filed by

Margo Carris ("Plaintiff") against First Student, Inc. ("Defendant") are the following motions:

(1) Plaintiff's motion for leave to file and serve an Amended Complaint pursuant to Fed. R. Civ.

P. 15(a)(2) (Dkt. No. 25); and (2) Defendant's cross-motion to dismiss the action for lack of

subject matter-jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim

upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 31.)  For the

reasons set forth below, Plaintiff's motion is denied, and Defendant's cross-motion is granted.

# TABLE OF CONTENTS

I.    RELEVANT BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.    Plaintiff's Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    B.    Plaintiff's Proposed Amended Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    C.    Parties' Briefing on Plaintiff's Motion to Amend Her Complaint and
          Defendant's Cross-Motion to Dismiss Plaintiff's Complaint. . . . . . . . . . . . . . . 5
          1.    Plaintiff's Motion to Amend Her Complaint. . . . . . . . . . . . . . . . . . . . 5
          2.    Defendant's Memorandum of Law in Opposition to Plaintiff's Motion and
               in Support of Its Own Cross-Motion. . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          3.    Plaintiff's Opposition Memorandum of Law in Opposition to Defendant's
               Cross-Motion and in Reply Regarding Her Own Motion. . . . . . . . . . . . 9

II.    RELEVANT LEGAL STANDARDS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    A.    Legal Standard Governing Motions for Leave to Amend. . . . . . . . . . . . . . . . . 10
    B.    Legal Standard Governing Dismissal for Failure to State Claim. . . . . . . . . . . . 12
    C.    Legal Standard Governing Motions to Dismiss for Lack of Subject-Matter
          Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

III.    ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    A.    Whether Plaintiff Has Alleged Facts Plausibly Suggesting Fraud. . . . . . . . . . . 18
    B.    Whether Plaintiff's Breach of Contract Claim Is Time-Barred by the
          Applicable Statute of Limitations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
          1.    Timeliness of Plaintiff's Hybrid LMRA § 301 Claim. . . . . . . . . . . . . . 23
          2.    Timeliness of Plaintiff's Duty of Fair Representation Claim Under Title
               VII Against Local 182. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
          3.    Plaintiff's Breach-of-Contract Claim Based Upon First Student's National
               Employee Handbook. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    C.    Whether Plaintiff Has Alleged Facts Plausibly Suggesting that Defendant
          and/or Local 182 Are State Actors or Private Parties Acting Under
          Color of State Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    D.    Whether Plaintiff Has Alleged Facts Plausibly Suggesting a Deprivation
          of Her Civil Rights by SCSD and the Proposed Defendants Employed
          by SCSD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
          1.    First Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
          2.    Fifth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
          3.    Ninth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
          4.    Thirteenth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
          5.    Fourteenth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
          6.    Municipal Liability Under 42 U.S.C. § 1981. . . . . . . . . . . . . . . . . . . . 40
          7.    Individual Liability of the Proposed SCSD Defendants Under
               42 U.S.C. § 1981. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
          8.    42 U.S.C. §§ 1983, 1985(2)-(3), and 1986. . . . . . . . . . . . . . . . . . . . 47

E. Whether Plaintiff Has Alleged Facts Plausibly Suggesting that Defendant, Local 182, and the Remaining Proposed Defendants Not Acting Under Color of State Law, Conspired to Violate Her Civil Rights Under § 1985(3). . . . . . . . . . . . . . 48

F. Whether Plaintiff's Proposed Claim Under § 1982 Is Futile. . . . . . . . . . . . . . . . . 49

G. Whether Plaintiff's Proposed Claim Under § 1988 Is Futile. . . . . . . . . . . . . . . . . 50

H. Whether Plaintiff's Discrimination Claim Under the New York State Human Rights Law, as Alleged in the Original Complaint, Is Barred by the Election-of-Remedies Provision. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

I. Whether Plaintiff's Cause of Action Under 42 U.S.C. § 1981 Against the Individual Proposed Defendants, Except for SCSD, Is Futile. . . . . . . . . . . . . . . 53

J. Whether Plaintiff Has Alleged Facts Plausibly Suggesting a Violation of Her Rights Under Title VII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

 1. Individuals Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

 2. Requirements to State a *Prima Facie* Claim Under Title VII. . . . . . . . . . 56

 3. Proposed Title VII Claim Against the Proposed Defendants in Plaintiff's PAC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

 4. Title VII Claim Against First Student in Plaintiff's Original Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

IV. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

Generally, liberally construed, Plaintiff's Complaint alleges as follows. (Dkt. No. 1.) On October 10, 2012, Plaintiff, an African-American, was employed by Defendant as a school bus driver when she was transporting students from school to their homes located on the northeast side of Syracuse, New York. (*Id.*, ¶ 11.) During Plaintiff's bus route, a male student on the bus began "kicking, punching, slapping, and spitting" on younger students. (*Id.*) Plaintiff issued several verbal warnings to the male student and stated that she would write a behavior referral, to which the student responded that he "d[idn't] care." (*Id.*) When the bus reached its first stop, the mother of a female student stepped onto the bus and "began to confront and threaten the male student by name." (*Id.*) Plaintiff instructed the parent that she could not be on the bus and advised that she would write a referral regarding the student's behavior and it would be taken care of through First Student. (*Id.*) The parent informed Plaintiff that she had reported the male student to the School District of Syracuse once before and no action had been taken to remedy the situation. (*Id.*) Plaintiff continued her bus route until her last stop, when the male student exited the bus. (*Id.*) As the male student exited, Plaintiff realized that he was a playmate of her two grandsons. (*Id.*)

After finishing her routes, Plaintiff returned to the bus garage and requested a referral form before leaving work. (*Id.*, ¶ 12.) However, Plaintiff also decided to go the male student's house to discuss his behavior with his guardian(s). (*Id.*) Once there, Plaintiff spoke with a young woman who answered the door. (*Id.*) Because the male student's grandmother was not home, Plaintiff explained what had occurred on the bus to the young woman and requested that

1

the young woman share the information with the student's grandmother when she returned. (*Id.*)

The next day, Plaintiff was on a bus route when she was contacted by dispatch, which informed her to discontinue her route and that she was being placed on administrative leave due to the events that had transpired the previous day. (*Id.*, ¶ 13.) Plaintiff was later informed by Defendant's assistant manager that the grandmother of the male student had contacted the Syracuse City School District ("SCSD") and complained that Plaintiff had come to her house with another student's parent and confronted her about her grandson's behavior. (*Id.*) Plaintiff alleges that, on October 15, 2012, she was terminated from her employment with First Student for going to the male student's house with another person and disclosing personal and/or confidential information about the student. (*Id.*) Finally, Plaintiff describes three cases of employee misconduct involving white bus drivers employed by First Student, which resulted in employee discipline but not termination. (*Id.*, ¶ 14-16.)

Based upon the foregoing, Plaintiff asserts two claims: (1) a claim that she was treated in a disparate manner and subjected to racially based discriminatory employment practices by her employers, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and (2) a claim that she was treated in a disparate manner and subjected to racially based discriminatory employment practices by her employers, in violation of N.Y. Executive Law § 296. (*Id.*, ¶ 1.)

###    B.    Plaintiff's Proposed Amended Complaint

With certain exceptions, the factual allegations contained in Plaintiff's proposed Amended Complaint ("PAC") are substantially identical to those in her original Complaint. Therefore, for purposes of brevity, the Court will not restate those allegations here. However,

Plaintiff seeks to add numerous parties to this action, including the following three employees of SCSD: (1) Sharon Contreas, Superintendent; (2) Haine Alica, Chief Operating Officer; and (3) Patricia Bailey, Director of Transportation. (Dkt. No. 26, at 3 [Pl.'s Am. Compl.].) In addition, Plaintiff seeks to include the following seven employees of First Student: (1) "John/Jane Doe," C.E.O./President; (2) Frank Luciano, Regional Vice President; (3) Matt Conti, General Manager; (4) Ty Worrell, Manager; (5) Lynea Lemke, Assistant Location Manager; (6) Jimmy James, Bus Attendant Supervisor Monitor; and (7) "John/Jane Doe," Investigator. (*Id.*) Finally, Plaintiff seeks also to include James LaGrange, Vice President of Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union No. 182 ("Union" or "Local 182"), and Gary Kirck, Steward of Local 182, as defendants in this lawsuit. (*Id.*)

Plaintiff sets forth several new claims in her PAC, alleging that the current Defendant, and the twelve proposed defendants, violated the following: (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; (2) N.Y. Executive Law § 296; (3) 42 U.S.C. §§ 1981, 1982, 1983, 1985(2)(3), 1986, and 1988; (6) Title I of the Labor Management Reporting and Disclosure Act ("LMRDA"); (7) 29 U.S.C. §§ 411-415; and (8) the First, Fifth, Ninth, Thirteenth, and Fourteenth Amendments to the U.S. Constitution. (Dkt. No. 26, at 1, 4-14.) Plaintiff also sets forth claims, under New York State law, for fraud and breach of contract in her PAC. (*Id.*)

Plaintiff's claims under the Civil Rights Act, N.Y. Executive Law § 296, 42 U.S.C. §§ 1981, 1982, 1983, and First, Fifth, Ninth, and Thirteenth Amendments of the U.S. Constitution relate to the allegations of racial discrimination in employment practices and disparate treatment, as discussed previously. (*Id.*, ¶ 1, 42.) With respect to Plaintiff's claims under 42 U.S.C. §§ 1985 and 1986, she alleges that Defendant, and the proposed defendants, acted in concert and

conspired to terminate her employment by making material misrepresentations and depriving her of evidence and information that she allegedly needed to adequately defend herself at two grievance hearings. (*Id.*, 8, 17, 19, 27.)

Regarding Plaintiff's LMRDA, 29 U.S.C. §§ 411-415, and breach-of-contract claims, she alleges that Defendant and the proposed defendants violated the Collective Bargaining Agreement ("CBA") between First Student and/or SCSD and her Union by failing to enforce its non-discrimination provision and certain rights allegedly guaranteed to her in First Student's National Employee's Handbook. (*Id.*, ¶ 4, 6, 18.) Moreover, Plaintiff alleges that Local 182 and/or First Student violated her rights under the CBA, and their duty of fair representation, by refusing to represent her at her grievance hearings. (*Id.*, ¶ 12, 42.)

Finally, with respect to Plaintiff's fraud claim, she alleges that the letters she received from Jimmie James and SCSD, and the termination letter from First Student are "false, fraudulent and highly misleading" because they mistakenly identify her as the person who threatened the student's grandmother. (*Id.*, ¶¶ 21, 25, 27, 29, 39.) According to Plaintiff, the proposed defendants knew that she was not the one who had threatened the student's grandmother; rather, it was the mother of another student that had visited the home on the same day and made threatening statements. (*Id.*, ¶¶ 25, 27-30, 35, 39.) Finally, Plaintiff alleges that this misrepresentation was racially motivated and led to her termination. (*Id.*, ¶¶ 31, 38-39.)

Familiarity with the factual allegations supporting these claims in Plaintiff's PAC is assumed in this Decision and Order, which is intended primarily for review by the parties.

**Parties' Briefing on Plaintiff's Motion to Amend Her Complaint and Defendant's Cross-Motion to Dismiss Plaintiff's Complaint**

### 1. Plaintiff's Motion to Amend Her Complaint

On February 2, 2014, United States Magistrate Judge Andrew T. Baxter issued a Uniform Pretrial Scheduling Order that, *inter alia*, stated that "[a]ny application to amend any pleading in this action shall be made on or before March 14, 2014." (Dkt. No. 21, at 1.) On March 14, 2014, Magistrate Judge Baxter granted Plaintiff's request for an extension of the deadline for her motion to amend her Complaint, extending that deadline from March 14, 2014, to April 4, 2014. (Text Order filed March 14, 2014.)

On March 9, 2014–five days after the motion-filing deadline–Plaintiff filed her motion. (Dkt. No. 25.) However, rather than containing a memorandum of law explaining why the Court should grant her leave to amend her Complaint pursuant to Fed. R. Civ. P. 15(a)(2), Plaintiff's motion contains an explanation of why the Court should excuse her five-day delay in filing her motion. (*Id*.) In addition, Plaintiff filed her proposed Amended Complaint. (Dkt. No. 26.)

Clearly, Plaintiff has misunderstood the need to file a motion to amend, rather than merely an amended complaint, under the circumstances. However, setting aside the fact that Plaintiff received adequate notice of the need to file a motion (e.g., through the Uniform Pretrial Scheduling Order she clearly received, and the courtesy copy of both the District's Local Rules of Practice and *Pro Se* Handbook she received on August 5, 2014), Plaintiff's *pro se* status does not relieve her of the obligation to comply with the Federal Rules of Civil Procedure.

**2. Defendant's Memorandum of Law in Opposition to Plaintiff's Motion and in Support of Its Own Cross-Motion**

Generally, in its memorandum of law, Defendant argues that Plaintiff has failed to state a claim upon which relief can be granted regarding her claims in the original Complaint and that Plaintiff's request to amend her Complaint should be denied because her proposed amendments are futile. (Dkt. No. 31, Attach. 1, at 4-14 [Def.'s Mem. of Law].) First, with respect to Plaintiff's original Complaint, Defendant argues that Plaintiff's claim, brought under N.Y. Executive Law § 296 and Article 15 of the N.Y. Human Rights Law ("HRL"), should be dismissed due to a lack of subject-matter jurisdiction. (*Id.* at 12-13.) Specifically, Defendant argues that the HRL contains an election-of-remedies provision that bars Plaintiff's suit in federal court where, as here, she previously filed a complaint with the N.Y. State Division of Human Rights alleging the same discriminatory conduct by Defendant. (*Id.*) Defendant argues that, because the Division issued a no-probable-cause determination, Plaintiff's claim under the HRL should be dismissed in its entirety. (*Id.*) Second, with respect to Plaintiff's Title VII Claims, Defendant argues that she cannot establish pretext because she admits in her Complaint that she engaged in the conduct for which she was terminated, i.e., going to the home of a student on her bus route while off-duty. (*Id.* at 13-14.)

Regarding Plaintiff's PAC, Defendant argues that Plaintiff's amendments are futile. First, Defendant argues that Plaintiff cannot state a claim for fraud for the following reasons: (1) the letter authored by Jimmie James states that "the mother of the child," not Plaintiff, was the one who visited the student's home and made threatening statements; (2) the alleged fraudulent statements do not set forth material misrepresentations because any inaccuracies contained in the

6

letter were stated by the grandmother and summarized by Mr. James; (3) Plaintiff does not allege facts plausibly suggesting that fraudulent statements were made by First Student with knowledge of their falsity or with intent to defraud; and (4) Plaintiff does not allege facts plausibly suggesting reasonable reliance on her *own part* that resulted in damages to her. (*Id.* at 4-5.)

Second, Defendant argues that Plaintiff's breach-of-contract claim is time-barred because any breach of the CBA, as against First Student, is a hybrid Labor Management Relations Act, Section 301/duty of fair representation claim, and is therefore governed by a six-month statute of limitations period. (*Id.* at 5.) Defendant argues that, because the grievance filed by Plaintiff with Local 182 was denied on October 24, 2012, Plaintiff knew, or should have known, of any alleged violation of the CBA on that date and her breach of contract claim against First Student is now time-barred. (*Id.* at 6.) Defendant also notes that any breach-of-contract claim based upon the Employee Handbook also fails because the handbook does not contain a promise of employment for any length of time and provides that First Student can skip steps in progressive discipline and immediately terminate an employee. (*Id.* at 6, n.4.)

Third, Defendant argues that Plaintiff's § 1983 and attendant constitutional claims fail for the following reasons: (1) the First Student defendants are not state actors, nor were they acting under color of state law when Plaintiff's employment was terminated; (2) the Ninth Amendment does not provide independent constitutional protection that can support a § 1983 claim; and (3) the First, Fifth, and Fourteenth Amendments confer jurisdiction only when "state action" is involved. (*Id.* at 6-8.)

Fourth, Defendant argues that Plaintiff's §§ 1985 and 1986 claims fail for the following reasons: (1) Plaintiff fails to allege facts plausibly suggesting an overt act by Defendant, or a

"meeting of the minds," which is required to support the conspiracy element of a § 1985 claim; (2) the fact that First Student, Local 182, and the SCSD were in contact regarding Plaintiff's employment status with First Student is insufficient to support a conspiracy claim under § 1985; (3) Section 1986 is a derivative claim of § 1985 and, because Plaintiff has not set forth sufficient allegations of a conspiracy against Defendant, she also fails to set forth a claim under § 1986; and (4) Plaintiff fails to identify any individual with the power to intervene or stop the conspiratorial conduct who is subject to liability under § 1986.  (*Id.* at 8-10.)

Fifth, Defendant argues that Plaintiff's Thirteenth Amendment claim fails to state a claim for the following two reasons: (1) Plaintiff has not alleged facts plausibly suggesting that First Student forced her into servitude through the use, or threatened use, of physical or legal coercion; and (2) Plaintiff has not alleged facts plausibly suggesting that she was forced into compulsory labor.  (*Id.* at 10-11.)

Sixth, Defendant argues that Plaintiff's § 1988 claim must fail because § 1982 prohibits private racial discrimination in the sale or rental of real or personal property, and it is well established that employment claims do not fall within this area because they do not implicate a protected property interest within the meaning of the statute.  (*Id.* at 11-12.)  According to Defendant, because Plaintiff has not alleged facts plausibly suggesting a protected property interest, Plaintiff has not stated a claim under § 1982.  (*Id.*)

Seventh, Defendant argues that Plaintiff's § 1988 claim must fail for the following two reasons: (1) § 1988 does not create an independent cause of action, nor does it create rights or confer jurisdiction; and (2) Plaintiff has failed to show that available federal statutes are inadequate to furnish suitable remedies, which would require the application of state law.  (*Id.* at 12.)

Eighth, and finally, Defendant argues that a Title VII claim must fail as against proposed defendants Frank Luciano, Matt Conti, Ty Worrell, and Lynea Lemke because Title VII does not provide for individual liability. (*Id.*)

### 3. Plaintiff's Opposition Memorandum of Law in Opposition to Defendant's Cross-Motion and in Reply Regarding Her Own Motion

Generally, in opposition to Defendant's cross-motion and in reply to Defendant's opposition to her own motion, Plaintiff makes the following arguments. First, Plaintiff argues that the factual allegations contained in her original Complaint (and the exhibits attached thereto) are sufficient to state a claim upon which relief can be granted under Fed. R. Civ. P. 9(b). (Dkt. No. 33, at 4-6 [Pl.'s Opp'n Mem. of Law].) Second, Plaintiff argues that her original Complaint, PAC, and exhibits attached thereto demonstrate that no genuine issue of material fact exists, and that, because Defendant has failed to submit evidence in the form of an affidavit to refute her allegations, she is entitled to judgment as a matter of law. (*Id.* at 6.) Moreover, Plaintiff argues that, because the evidence submitted by Defendant is nothing more than "merely colorable" and is not significantly probative, it is insufficient to raise a genuine issue of material fact. (*Id.* at 10-11.)

Third, Plaintiff argues that she has not alleged class-based discrimination under the Equal Protection Clause of the Fourteenth Amendment; rather, she alleges she has been singled out as a "class-of-one" by Defendant and the proposed defendants. (*Id.*) Furthermore, Plaintiff argues that she has demonstrated Defendant's disparate treatment through the factual allegations discussed previously and that such conduct cannot withstand a rational basis level of scrutiny under the Equal Protection Clause. (*Id.* at 7.) In addition, Plaintiff argues that claims under 42 U.S.C. §§ 1981 and 1985 extend to private actors. (*Id.*)

Fourth, Plaintiff argues that her claims under 42 U.S.C. § 1983 are not futile for the following reasons: (1) § 1983 extends to individuals who were personally involved in the alleged deprivation of rights; (2) employers can be held vicariously liable for the tortuous conduct of their employees; and (3) municipalities, including school districts, are considered "persons" within the meaning of § 1983. (*Id.* at 8.)  Plaintiff argues that she has sufficiently pled a claim under § 1983 because she has alleged that Defendant and the proposed defendants unlawfully terminated her based upon official policy.  (*Id.*)  Moreover, Plaintiff argues that she has sufficiently alleged that SCSD is liable under a theory of negligent supervision and/or failure to train (*Id.* at 8-9.)

Fifth, and finally, Plaintiff argues that her claims, based upon Defendant's alleged conspiratorial conduct, are not futile because she has sufficiently pled that Defendant's fraudulent conduct constitutes an overt-act, that a conspiracy existed, that the conspiracy was motivated by racially based discrimination, and that she suffered unlawful harm as a result of that conspiracy.  (*Id.* at 9-10.)  Similarly, Plaintiff argues that Defendant should be equitably estopped from raising a statute-of-limitations defense because Defendant should not be allowed to take advantage of its own wrongdoing and concealment.  (*Id.* at 10.)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Leave to Amend

A motion for leave to amend a complaint is governed by Fed. R. Civ. P. 15, which states that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir.1993).  Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a complaint should be

freely given in the absence of any apparent or declared reason to not grant leave to amend, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. *See Foman*, 371 U.S. at 182; *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block–Bldg. 1 Hous.*, 608 F.2d 28, 42 (2d Cir.1979); *Meyer v. First Franklin Loan Servs, Inc.*, 08-CV-1332, 2010 WL 277090, at *1 (N.D.N.Y. Jan. 19, 2010); *Jones v. McMahon*, 98-CV-0374, 2007 WL 2027910, at *10 (N.D.N.Y. July 11, 2007).

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 333 (E.D.N.Y. 2013) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 [2d Cir.2002]).  Therefore a proposed amendment is not futile if it states a claim upon which relief can be granted.  *See Annunziato*, 293 F.R.D. at 333 (citations omitted).  As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993) (citations omitted); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile.  Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course,

where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) ("[W]here . . . there is no merit in the proposed amendments, leave to amend should be denied").[1]

This rule applies even to *pro se* plaintiffs. *See, e.g., Cuoco*, 222 F.3d at 103; *Brown*, 1997 WL 599355 at *1. As explained below in Part II.B. of this Decision and Order, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12; rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.

### B.     Legal Standard Governing Dismissal for Failure to State Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a

---

[1]     The Court notes that two Second Circuit cases exist reciting the standard as being that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The problem with these cases is that their "rule out any possibility, however likely it might be" standard is rooted in the "unless it appears beyond doubt" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which was "retire[d]" by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007). *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (relying on *Branum v. Clark*, 927 F.2d 698, 705 [2d Cir. 1991], which relied on *Conley v. Gibson*, 355 U.S. 41, 45-46 [1957]). Thus, this standard does not appear to be an accurate recitation of the governing law.

challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal"

13

notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for

relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949  (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12.[2] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set

---

[2]    *See Vega v. Artus,* 610 F. Supp. 2d 185, 196 & nn.8-9 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F. Supp. 2d at 214 & n.34 (citing Second Circuit cases).

forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[3]  Stated more simply, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."  *Jackson*, 549 F. Supp. 2d at 214, n.28 [citations omitted].[4]

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

---

[3]　　*See Rosendale v. Brusie*, 374 F. App'x 195, 196 (2d Cir. 2010) ("[A]lthough the courts remain obligated to construe a pro se complaint liberally, . . . the complaint must contain sufficient factual allegations to meet the plausibility standard."); *Vega,* 610 F. Supp. 2d at 196, n.10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F. Supp. 2d at 214 & n.34 (citing Second Circuit cases).

[4]　　It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [emphasis added].  That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim.  *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added].  That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever.  Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.  *See Rusyniak,* 629 F. Supp. 2d at 214 & n.35 (explaining holding in *Erickson*).

any matter of which the court can take judicial notice for the factual background of the case.[5]

Moreover, in the Second Circuit, a *pro se* plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of his complaint–to the extent those papers are consistent with the allegations in the complaint.[6]

---

[5] *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

[6] *See Drake v. Delta Air Lines, Inc.,* 147 F.3d 169, 170 n.1 (2d Cir. 1998) (per curiam) ("[W]e deem Drake's complaint to include the facts contained in his memorandum of law filed in response to Delta's 1996 motion to dismiss."); *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) ("In his affidavit submitted in opposition to defendants' motion to dismiss, Gill asserts that Mooney's actions amounted to deliberate and willful indifference. Liberally construed under *pro se* pleading standards, Gill's allegations against Mooney involve more than ordinary lack of due care for the prisoner's interests or safety, . . . and therefore state a colorable claim under the Eighth and Fourteenth Amendments.") (internal quotation marks and citation omitted); *Donhauser v.Goord*, 314 F. Supp. 2d 119, 212 (N.D.N.Y.) (Sharpe, M.J.) ("[I]n cases where *a*

## C. Legal Standard Governing Motions to Dismiss for Lack of Subject-Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S. Cit. 2396 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A district court may look to evidence outside of the pleadings when resolving whether to dismiss for lack of subject-matter jurisdiction. *Makarova*, 201 F.3d at 113. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)). When a court evaluates whether to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

## III. ANALYSIS

### A. Whether Plaintiff Has Alleged Facts Plausibly Suggesting Fraud

After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Defendant in its memorandum of law. (Dkt. No. 31, Attach. 1, at 4-5 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

---

*pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they "are consistent with the allegations in the complaint.") (collecting district court cases), *vacated on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004) (Hurd, J.).

"Under New York law, a plaintiff claiming fraud must show: '(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of plaintiff; and (5) resulting damage to the plaintiff." *Hills v. Praxair, Inc.*, 11-CV-0678, 2012 WL 1935207, at *20 (W.D.N.Y. May 29, 2012) (quoting *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 [2d Cir. 2006]).  Further, to state a claim sounding in fraud, Fed. R. Civ. P. 9(b) imposes a heightened pleading standard: "[A] party must state with particularity the circumstances constituting fraud or mistake."  To plead a fraud claim with the necessary particularity, the plaintiff must at a minimum: "(1) specify the statements that . . . were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 84 (2d Cir. 1999); *accord, Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006); *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 387 (E.D.N.Y. 2013). "[C]onclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir. 1982).  However, "a plaintiff need not plead dates, time and places with absolute precision, so long as the complaint gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based." *Int'l Motor Sports Grp., Inc. v. Gordon*, 98-CV-5611, 1999 WL 619633, at *3 (S.D.N.Y. Aug. 16, 1999).

In establishing scienter, a plaintiff must allege facts that give rise to a strong inference of fraudulent intent, which can be accomplished in two ways: "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *Rikhy v. AMC Computer Corp.*, 01-CV-7007, 2002 WL 1424596, at *2 (S.D.N.Y. July 2, 2002).

As discussed in Part I.A. of this Decision and Order, the main thrust of Plaintiff's fraud claim is that the letters she received from Jimmie James and SCSD, and the termination letter from First Student, are "false, fraudulent and highly misleading" because they mistakenly identify her as the person who threatened the male student's grandmother. (Dkt. No. 26, ¶¶ 21, 25, 27, 29-34, 37, 39 [Pl.'s Am. Compl.].) According to Plaintiff, Defendant, as well as the proposed defendants, *knew* that she was not the one who had threatened the student's grandmother; rather, it was the mother of another student who had visited the home the same day and made threatening statements. (*Id.*, ¶¶ 25, 27-30, 35, 39.)

First, Plaintiff has attached all three of the subject letters to her PAC, which the Court will consider for purposes of this motion as both integral to the Complaint and incorporated by reference. (*Id.* at P/D-7 through P/D-9.) The letter authored by Mr. James states that he spoke with the student's grandmother regarding two adults that allegedly came to the grandmother's home to complain about her grandson's behavior. (*Id.* at P/D-7.) According to Mr. James' letter, the adults included Plaintiff and one other person. (*Id.*) The letter further states that

> the other adult threatened her grandson and said, "if you touch my daughter again, I will break your neck." Grandma stated that she didn't want a confrontation with the adults at her home and admitted that her grandson can be difficult. However, she felt that the driver had no right to bring another parent to her home and threaten her grandson.

(*Id.*) Mr. James concludes the letter by stating that "I spoke with Lynea Lemke, Assistant Manager, requesting that First Student West check to see if the allegation that the driver did return to the grandmother's home with another adult was true. It was found to be true, and the matter was turned over to my Director on Oct. 14th." (*Id.*)

Significantly, Plaintiff admits, in both her Complaint and PAC, that she returned to the student's home while off-duty. (Dkt. No. 1, ¶ 12; Dkt. No. 26, at 2.) Plaintiff has also attached an affidavit to her PAC from her daughter, which states that the daughter accompanied Plaintiff to the student's home. (Dkt. No. 26, at Ex. P-6.) Thus, Plaintiff admits that she went to the student's home, off-duty, accompanied by another adult.[7] Moreover, the letter specifically states that, according to the grandmother, it was "the other adult,"[8] not Plaintiff, who made threatening statements while at the student's home.

Second, although Plaintiff appears to allege that this mistake in identity was the basis for her unlawful termination, her pleadings suggest otherwise. Specifically, in the Complaint, Plaintiff alleges that, on "October 15th 2012, I was terminated for going to the males [sic] students [sic] home with another person and disclosing personal and or confidential information about that student." (Dkt. No. 1, ¶ 13.) Based upon the pleadings, Plaintiff admits that she did in fact go to the student's home (the grandmother's home) with another person (her daughter) and disclosed personal and/or confidential information about the student (the student's behavior on the bus). Therefore, the Court cannot find a basis to sustain a fraud claim because Plaintiff has failed to allege facts plausibly suggesting that Mr. James made material misrepresentations about Plaintiff, with knowledge of their falsity, and with intent to defraud.

---

[7] Although the exact age of Plaintiff's daughter is unknown, the affidavit mentions that the daughter can drive and is a mother herself. Therefore, it is plausible that Plaintiff's daughter is not a minor.

[8] Plaintiff has attached a second affidavit to her PAC from a parent, Quintina Wilson, who states that she went to the grandmother's home, without Plaintiff, to complain about the male student's abusive behavior towards her daughter while on the bus. (Dkt. No. 26, at Ex. P-5.) The affidavit explains that Ms. Wilson was the one who made threatening statements while at the student's home because she was upset about the way her daughter was treated.

Similarly, the remaining two letters do not support Plaintiff's claim. The letter from

Lynea Lemke, Assistant Location Manager at First Student, states that

> [o]n 10-11-2012 you were placed on administrative leave pending
> investigation of an incident that involved you going to the home of
> a student on the route you were covering after hours. The
> investigation has now been completed. Due to the findings of the
> investigation, your employment with First Student is terminated,
> effective immediately.

(Dkt. No. 26, at Ex. P/D-8.) With respect to Ms. Lemke's letter, Plaintiff has failed to meet the

heightened pleading requirements of Fed. R. Civ. P. 9(b). Specifically, Plaintiff alleges in her

PAC that Ms. Lemke

> placed Plaintiff in a false light when she then, unlawfully, filed a
> blatantly false, fraudulent, malicious, and highly misleading letter
> terminating Plaintiff solely based on the false complaint and
> mistaken identification, by a white person, whereby said "white"
> person arbitrarily mistook the Plaintiff for looking like (i.e.,
> similar) to another African American (i.e., the black) woman that
> actually harassed the "white" female witness in these matters.

(Dkt. No. 26, ¶ 25.)

First, Plaintiff has failed to allege what statements contained in Ms. Lemke's letter are

fraudulent and why they are fraudulent. *See Stevelman*, 174 F.3d at 84. Notwithstanding this

failure, Plaintiff, as discussed above, admits she went to the home of a student on her bus route

while off-duty, which, as explained in Ms. Lemke's letter, was the basis for Plaintiff's

termination. Second, Plaintiff's allegation that Ms. Lemke terminated her employment, based

solely on the allegation that she was the one who made threatening statements, is at odds with

other allegations in Plaintiff's Complaint. Specifically, Plaintiff alleges that "I was informed by

the assistant manager of First Student that the reasoning behind this decision was because the

Grandmother of the male student placed a phone call to the [SCSD] stating that I came to her home with another parent that her grandson had a [sic] altercation with earlier on the bus and that *the parent* proceeded to threatened [sic] her and her grandson." (Dkt. No. 1, ¶ 13) (emphasis added).  According to this factual allegation, Plaintiff acknowledges that Ms. Lemke *knew* Plaintiff was *not* the one who made threatening statements, and that the reasoning for her termination was that Plaintiff went to the student's home with another person.

Finally, the contents of the third letter, authored by Patricia Bailey of SCSD, simply state that, "[d]ue to an incident on October 10, 2012, the above-named bus driver is removed from all SCSD bus routes effective immediately." (Dkt. No. 26, at Ex. P/D-9.)  For the reasons discussed above with regard to the other letters, Plaintiff has failed to allege facts plausibly suggesting a fraud claim based upon Ms. Bailey's letter.  (Dkt. No. 26, ¶¶ 27, 29, 30-33.)

**B.  Whether Plaintiff's Breach of Contract Claim Is Time-Barred by the Applicable Statute of Limitations**

After carefully considering the matter, the Court answers this question in the affirmative to the extent that Plaintiff alleges a breach of contract based upon a Labor Management Relations Act § 301/duty of fair representation claim (i.e., a hybrid LMRA § 301 claim) and a breach of the policies contained in First Student's National Employee Handbook, for the reasons discussed below.  However, the Court answers this question in the negative to the extent that Plaintiff alleges Local 182 breached its duty of fair representation under a Title VII theory of liability.

**1.  Timeliness of Plaintiff's Hybrid LMRA § 301 Claim**

"[T]he appropriate statute of limitations for 'hybrid' actions, i.e., cases involving both claims against the employer under Section 301 and claims against the union for breach of the duty of fair representation, is six months." *McLeod v. Verizon N.Y., Inc.*, 995 F. Supp. 2d 134,

142 (E.D.N.Y. 2014) (quoting *Civardi v. Gen. Dynamics Corp.*, 603 F. Supp. 2d 393, 397 [D. Conn. 2009]); *Korthas v. Ne. Foods, Inc.*, 03-CV-0552, 2006 WL 519401, at *11 (N.D.N.Y. Feb. 27, 2006) (Munson, J.).  "The six-month clock begins to run from 'the time when the union member knew or reasonably should have known that a breach of the duty of fair representation has occurred." *McLeod* 995 F. Supp. 2d at 142 (quoting *Rosario v. Local 1106 Transp. Works of Am.*, 29 F. Supp. 3d 153, 159 [E.D.N.Y. 2014]).

Plaintiff argues that Defendant should be equitably estopped from asserting a statute-of-limitations defense.  "'Unlike equitable tolling, which is invoked in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment, equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay bringing his lawsuit.'" *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 802 (2d Cir. 2014) (quoting *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 49-50 [2d Cir 1985]).  "Equitable estoppel applies in cases where, for example, the defendant lulls the plaintiff into not filing suit with assurances that she will settle the case." *Ellul*, 774 F.3d at 802.  "To trigger the doctrine of equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment." *Id.*

In *Ellul*, plaintiffs argued that defendants should be equitably estopped from asserting a statute-of-limitations defense because defendants deceived them and then fraudulently concealed information by withholding and/or destroying documents related to their claims.  *Id.* at 801-02. The Second Circuit, however, focused on whether the defendants "made any misrepresentations

24

that caused [plaintiffs] to delay bringing this lawsuit once the facts became or should have become known to them." *Id.* at 802. The court determined that plaintiffs had the necessary information to commence a lawsuit during the statutory period. *Id.* 801-02. As a result, the court "perceive[d] no basis in the record for applying equitable estoppel." *Id.* at 802.

In the present case, Plaintiff sets forth a similar argument, arguing that Defendant and/or the proposed defendants should not be allowed to benefit from their own wrongdoing and fraudulent concealment. (Dkt. No. 33, at 10 [Pl.'s Opp'n Mem. of Law].) However, Plaintiff has failed to allege facts plausibly suggesting any misrepresentations that caused her to delay bringing this claim. To the contrary, Plaintiff's grievance was denied on October 24, 2012,[9] after two formal hearings were held. (Dkt. No. 26, ¶ 22 [Pl.'s Am. Compl.]; Dkt. No. 31, Attach. 2, at Ex. A [Novich Decl.].) Furthermore, Plaintiff objected to the hearings being held because she had requested representation from Local 182, which Mr. LaGrange allegedly refused to provide. (Dkt. No. 26, ¶ 22.) Therefore, Plaintiff knew, or should have known, of any alleged violation of the CBA as of October 24, 2012, when her grievance was denied. *See Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 165 (2d Cir. 1989) ("[A] breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains."). Plaintiff did not file her Complaint until August 5, 2013, and her PAC was filed on April 9, 2014. Accordingly, Plaintiff's hybrid LMRA § 301 claim is futile because it is barred by the applicable statute of limitations. *See McLeod* 995 F. Supp. 2d at 143 ("Where . . . a plaintiff

---

[9] Defendant has attached a signed document from Plaintiff's Union, dated October 24, 2012, notifying Plaintiff that her grievance was denied. The Court will consider this document as it is integral to Plaintiff's PAC and is incorporated by Plaintiff's reference to the grievance proceeding. *See Hemans v. Long Island Jewish Med. Ctr.*, 2010 WL 4386692, at *4 (E.D.N.Y. Oct. 28, 2010); *Rosario*, 29 F. Supp. 3d at 158.

alleging a hybrid LMRA § 301 claim has not set forth any viable equitable reason for tolling a statute of limitations, courts in this circuit have dismissed such claims for untimeliness.").

### 2. Timeliness of Plaintiff's Duty of Fair Representation Claim Under Title VII Against Local 182

To the extent Plaintiff alleges that Local 182 breached its duty of fair representation under a Title VII theory of liability (Dkt. No. 26, ¶¶ 13, 26), that claim is not time-barred at this time. "It is well established that a duty of fair representation claim can fall within Title VII if a union allowed the breach to go unrepaired and Plaintiff can show that the Union's actions were motivated by discriminatory animus." *Blaizin v. Caldor Store #38*, 97-CV-1604, 1998 WL 420775, at *2 (S.D.N.Y. July 27, 1998). With respect to such claims, "the statute of limitations under Title VII–not the six-month statute of limitations for breach of duty of fair representation–controls." *Nweke v. Prudential Ins. Co. of Am.*, 25 F. Supp. 2d 203, 219 (S.D.N.Y. 1998). A complaint alleging discrimination under Title VII must be filed with the EEOC "within 180 days of the alleged unlawful employment action or, if the claimant has already filed the charge with a state or local equal employment agency, within 300 days of the alleged discriminatory action." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996); *see also Cooper v. Wyeth Ayerst Lederie*, 106 F. Supp. 2d 479, 500 (S.D.N.Y. 2000) ("The appropriate statute of limitations for a fair representation claim under Title VII is 300 days.").

As discussed above, Plaintiff was denied representation from Local 182 on or about October 11, 2012 (Dkt. No. 26, ¶¶ 22-23), and Plaintiff's PAC was filed on April 9, 2014. Plaintiff has alleged only that she filed a complaint with the New York State Division of Human

Rights and that, on May 11, 2013, she received a "Right to Sue" letter.  (Dkt. No. 26, at 3.)

Therefore, Plaintiff's claim is timely, assuming she filed a complaint with the EEOC during the

requisite time period.  Unfortunately, Plaintiff has not alleged whether this occurred or not.

However, because it is plausible that she did file a complaint with the EEOC within the

applicable time period, the Court is unable to find, at this time, that Plaintiff's claim is futile on

the basis that it is time-barred.

### 3.    Plaintiff's Breach-of-Contract Claim Based Upon First Student's National Employee Handbook

Finally, the Court finds that a breach-of-contract claim premised on a violation of

Defendant's employee handbook is futile.  Plaintiff has attached selected pages of the employee

handbook to her PAC.  (*See* Dkt. No. 26, Ex. P-1 through P-4.)  She alleges in her PAC that

similarly situated white employees were treated differently by Defendant when they were

afforded progressive disciplinary procedures after being accused of misconduct and allowed to

remain employed. (*Id.*, ¶ 34.)  However, one of the pages of the employee handbook states that

First Student reserves the right to bypass progressive steps of discipline.  Specifically, the

handbook states, in relevant part, that "Depending on the severity of the rule infraction . . .

*disciplinary action could bypass the progressive steps and result in suspension or termination*."

(*Id.* at P-2) (emphasis added).  Moreover, the pages from the handbook do not contain any

promises of employment for any duration, nor does Plaintiff allege that she was anything more

than an at-will employee.  Accordingly, there is no merit to Plaintiff's argument that Defendant

violated the provisions of its handbook when it terminated her employment.

Next, Plaintiff alleges that Defendant's use of authority deprived her of her rights not to be discriminated and/or retaliated against in violation of the rights guaranteed to her by the handbook. (*Id.*, ¶¶ 18, 6.) First, the handbook pages provided by Plaintiff do not contain anti-discrimination or retaliation clauses. Nonetheless, it is "well-established that an employer's anti-discrimination policies and manuals cannot serve as the basis for a breach of contract claim." *Davis v. Oyster Bay-E.*, 03-CV-1372, 2006 WL 657038, at *15 (E.D.N.Y. Mar. 9, 2006); *see also Abdi v. Brookhaven Sci. Assocs., LLC*, 447 F. Supp. 2d 221, 229 (E.D.N.Y. 2006). Therefore, Plaintiff's breach-of-contract claim premised on a violation of Defendant's employee handbook is futile.

### C. Whether Plaintiff Has Alleged Facts Plausibly Suggesting that Defendant and/or Local 182 Are State Actors or Private Parties Acting Under Color of State Law

After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Defendant in its memorandum of law. (Dkt. No. 31, Attach. 1, at 6-8 [Def.'s Mem. of Law].) To those reasons the Court adds the following analysis.

"In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). "'Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action.'" *Ciambriello*, 292 F.3d at 323 (quoting *United States v. Int'l Bd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 941 F.2d 1292, 1295-96 [2d Cir. 1991]).

Defendant argues that First Student is a private entity that was not acting under color of state law when it terminated Plaintiff's employment. (Dkt. No. 31, Attach. 1, at 7 [Def.'s Mem. of Law]). Plaintiff alleges in conclusory fashion that Defendant, and the proposed defendants, are state employees. (Dkt. No. 26, ¶ 3 [Pl.'s Am. Compl.].) Plaintiff also alleges, upon information and belief, that "First Student is a corporation or similar business entity organized and existing under the laws of the State of Ohio." (Dkt. No. 1, ¶ 3 [Pl.'s Compl.].) Plaintiff does not, however, allege any facts plausibly suggesting that First Student is indeed a state actor or otherwise respond to Defendant's argument on this issue. With respect to Local 182, it has been held that labor unions generally are not state actors. *See Ciambriello*, 292 F.3d at 323 ("Labor unions such as CSEA generally are not state actors"); *Dorcely v. Wyandanch Union Free Sch. Dist.*, 06-CV-1265, 2007 WL 2815809, at *4 (E.D.N.Y. Sept. 25, 2007) ("[L]abor unions generally are not state actors . . . the fact that the Union represents public employees does not make it a state actor."); *Marrero v. City of N.Y.*, 02-CV-6634, 2003 WL 1621921, at *4 (S.D.N.Y. Mar. 28, 2003). Therefore, Plaintiff must allege facts plausibly suggesting that First Student and Local 182 were acting under color of state when she allegedly suffered a deprivation of her constitutional rights.

"A private actor may be considered to be acting under the color of state law for purposes of Section 1983 if the private actor was 'a willful participant in joint activity with the State or its agents.'" *Young v. Suffolk Cty.*, 922 F. Supp. 2d 368, 385 (E.D.N.Y. 2013) (quoting *Ciambriello*, 292 F.3d at 324). "This potential liability under Section 1983 also applies to a private party who 'conspires with a state official to violate the plaintiff's constitutional rights . . . .'" *Young*, 922 F. Supp. 2d at 385 (quoting *Fisk v. Letterman*, 401 F. Supp. 2d 362, 378 [S.D.N.Y. 2005]). "Thus,

in order to prove that a private actor was acting under the color of state law when he engaged in allegedly unconstitutional conduct, a plaintiff must point to evidence tending to show either (1) the existence of joint activity between the private actor and the state or its agents, or (2) a conspiracy between the state or its agents and the private actor." *Id.*

"The concepts of acting 'jointly' or in 'conspiracy with' state actors are intertwined . . . . Even if considered as conceptually separate theories, both require the pleading of facts sufficient to show something more than conclusory allegations." *Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 445 (E.D.N.Y. 2012). "Joint action with a state official can be found only if it is shown that the private individual acted in 'willful collaboration' with a state actor to deprive the plaintiff of a federal right." *Stewart*, 851 F. Supp. 2d at 445 (citing *Bacquie v. City of New York*, 99-CV-10951, 2000 WL 1051904, at *1 [S.D.N.Y. July 1, 2000]). "Such collaboration is stated only if a plaintiff can plead more than 'conclusory allegations' or 'naked assertions.'" *Id.* "Thus, pleadings asserting joint activity must allege 'specific facts tending to show agreement and concerted action.'" *Id.* (quoting *Bacquie*, 2000 WL 1051904, at *1).

"Similarly, stating a Section 1983 conspiracy claim against a private individual requires more than pleading simply, and in conclusory fashion that the defendant 'conspired' with state actors." *Id.* (citing *Ciambriello*, 292 F.3d at 323). "Instead, the plaintiff must allege: '(1) the agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'" *Id.* (quoting *Pacicca v. Stead*, 456 F. App'x 9, 12 [2d Cir. 2011]). "Complaints alleging nothing more than vague and general allegations of conspiracy are properly dismissed . . . . While places and dates of meetings need not be pled with particularity, pleadings must set forth a plausible

theory of agreement and concerted action." *Id.* (citing *McIntyre v. Longwood Cent. Sch. Dist.*, 07-CV-1337, 2008 WL 850263, at *11 [E.D.N.Y. Mar. 27, 2008]). "[I]f this court were to allow a plaintiff to go beyond the pleading stage of litigation upon setting forth nothing more than conclusory allegations of conspiracy with state actors, 'private actors–including lawyers and witnesses–would be subjected to the substantial cost and disruption incurred by litigants in the discovery phase of these lawsuits, without any indication whatsoever that the plaintiff has a 'plausible' conspiracy claim.'" *Id.* (quoting *Flores v. Levy*, 07-CV-3753, 2008 WL 4394681, at *8 [E.D.N.Y. Sept. 23, 2008]).

Here, Plaintiff alleges that from October 4, 2012,[10] through October 15, 2012, Defendant, as well as the proposed defendants, "agreed with each other and with others to engage in and cause Plaintiff to be denied her rights, privileges, and/or immunities as mandated in Defendants [sic] First Student[']s National Employee Handbook." (Dkt. No. 26, ¶ 6.) Plaintiff further alleges that Ms. Lemke and Mr. LaGrange "agreed to deny and/or stultify . . . Plaintiff's CBA rights on the above dates." (*Id.*, ¶ 7.) Plaintiff then alleges that the proposed defendants acted together in suppressing and/or depriving Plaintiff of evidence and information that she allegedly needed to effectively defend herself at her two grievance hearings. (*Id.*, ¶ 14.) Similarly vague allegations are made throughout her PAC. (*See*, *e.g.*, *id.*, ¶¶ 8, 12-13, 16, 19.) Finally, Plaintiff also alleges

---

[10]     There appears to be some confusion surrounding the date of the incident. Mr. James' letter states that Plaintiff allegedly went to the student's home on October 4, 2012, and he received the complaint from the student's grandmother the same day. (Dkt. No. 26, at Ex. P/D-7.) However, Plaintiff alleges in both her Complaint and PAC that the subject incident occurred on October 10, 2012. (Dkt. No. 1, ¶ 11; Dkt. No. 26, at 2.) Furthermore, the letter from Patricia Bailey, Director at SCSD, stated that Plaintiff was being removed from all SCSD bus routes due to an incident that occurred on October 10, 2012. (Dkt. No. 26, at Ex. P/D-9.) Accepting Plaintiff's allegations as true, the Court will use October 10th as the date of the incident.

that Defendant and the proposed defendants conspired with each other when they made "material misrepresentations" against Plaintiff, "via three separate fraudulent letters," which were described previously in Part III.A. of this Decision and Order. (*Id.*, ¶ 27.)

Having carefully read and liberally construed these allegations, the Court finds that Plaintiff has failed to allege facts plausibly suggesting that Defendant and Local 182 willfully collaborated with a state actor to deprive Plaintiff of a civil right. Nor has Plaintiff alleged facts, beyond "conclusory allegations" and "naked assertions," tending to show agreement and concerted action to suggest joint collaboration between the parties and a state actor. Similarly, Plaintiff's Complaint and PAC are devoid of any allegations of instances of conduct plausibly suggesting a conspiracy or any "meeting of the minds." *See Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999) (holding that vague references to some conspiracy and hints at some tenuous link between a conspiracy and the fact that plaintiff was of a certain race are insufficient to state a claim for conspiracy to deprive plaintiff of his civil rights). As discussed above, such facts must be alleged in the Complaint in order to survive a motion to dismiss.

Although Plaintiff alleges, in general terms, that Defendant and the proposed defendants were in communication with each other with respect to Plaintiff's case, it is well established that, "[c]ommunications between a private and a state actor, without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005); *see also Hills v. Praxair, Inc.*, 2012 WL 1935207, at *8 ("[M]ere fact that defendants were in contact with each other concerning Plaintiff's case . . . cannot support a claim of conspiracy."); *Cox v. Onondaga Cty. Sheriff's Dep't*, 08-CV-0387, 2012 WL 1069053, at *10 (N.D.N.Y. Mar. 29, 2012) (holding statement by

one defendant to another that he should "squash" plaintiff's complaint insufficient to establish meeting of the minds).

Therefore, because Plaintiff has failed to allege facts plausibly suggesting that Defendant and Local 182 are state actors, or were acting under color of state law when her employment was terminated, Plaintiff has not stated a claim against these parties under § 1983. Similarly, Plaintiff's proposed claims against these parties, which allege a deprivation of rights under the First, Fifth, Ninth, and Fourteenth Amendments, also fail to state a claim due to her failure to sufficiently allege state action. *See McPartland v. Am. Broad. Companies, Inc.*, 623 F. Supp. 1334, 1341 (S.D.N.Y. 1985) ("The First, Fifth and Fourteenth Amendments to the United States Constitution confer jurisdiction only when 'state action' is involved."); *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009) ("The Fourteenth Amendment . . . incorporates the First Amendment, so '[t]he Fourteenth Amendment, and, through it, the First . . . Amendment[ ], do not apply to private parties unless those parties are engaged in activity deemed to be 'state action.'") (citations omitted); *Rini v. Zwirn*, 886 F. Supp. 270, 289 (E.D.N.Y. 1995) ("The Ninth Amendment is recognized as a rule of construction, not one that protects any specific right . . . . No independent constitutional protection is recognized which derives from the Ninth Amendment and which may support a § 1983 cause of action.").[11]

---

[11]    Plaintiff's PAC references violations of Article, 1 §§ 6, 11, 17 of the New York State Constitution. (Dkt. No. 26, at 14 n.1.)  However, these alleged violations also require state action in order to be cognizable.  *See DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 350 (S.D.N.Y. 2009) ("Regarding the article 1, section 11 equal protection claim, plaintiff has not alleged or supplied any facts indicating that defendants . . . are state actors.  Thus, plaintiff has failed to meet the 'state action' requirement of her claim."); *Rohan v. Am. Bar Ass'n*, 93-CV-1338, 1995 WL 347035, at *9 (E.D.N.Y. May 31, 1995) (dismissing plaintiff's due process claim under N.Y. Const., art. 1, § 6, because it does not apply to private conduct); *McGovern v. Local 456, Int'l Bhd. of Teamsters, Chauffeurs & Warehousemen & Helpers of Am., AFL-CIO*, 107 F. Supp. 2d 311, 318 (S.D.N.Y. 2000) ("On its face, section 17 does not create a cause of action for damages.").

**D.**     **Whether Plaintiff Has Alleged Facts Plausibly Suggesting a Deprivation of Her Civil Rights by SCSD and the Proposed Defendants Employed by SCSD**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated below.

**1.     First Amendment**

In order to state a First Amendment retaliation claim, plaintiff must allege the following: (1) she engaged in speech that was constitutionally protected; (2) she suffered an adverse employment action; and (3) there existed a causal connection between the protected speech and the adverse employment action, such that it could be inferred that the speech was a "motivating factor" in the employment action. *Spencer v. Holley Cent. Sch. Dist.*, 734 F. Supp. 2d 316, 319 (W.D.N.Y. 2010) (citing *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 152 [2d Cir. 2006]). "Speech that is 'constitutionally protected' is that which takes place when one speaks, in the capacity of a citizen, about a matter of public concern–that is, a matter of political, social or other concern to the community at large, as opposed to a personal matter." *Spencer*, 734 F. Supp. 2d at 319. "In making its determination, the court should focus on the motive of the speaker, and attempt to discern whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." *Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 722 (S.D.N.Y. 2005) (citing *Lewis v. Cowen*, 165 F.3d 154, 163-64 [2d Cir. 1999]). "The key inquiry is whether the statements were made by plaintiff in her role as a disgruntled employee or her role as a concerned citizen." *Hanig*, 384 F. Supp. 2d at 722. If it is determined that Plaintiff did not engage in constitutionally protected speech, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).

Here, Plaintiff alleges her rights under the First Amendment were violated in the

following ways:

> Each and every Defendants['] conduct herein, all, was predicated
> on an invidious discriminatory animus, class based, against
> Plaintiff because of her ability, courage, and/or willingness to
> exercise her first amendment constitutional rights to speak "Truth
> to power" when she chose (rightly or wrongly) and fortunately for
> her, to ignore Defendants['] requests that she NOT get any
> affidavits from potential witnesses.

(Dkt. No. 26, ¶ 8.) In addition, Plaintiff alleges her rights were violated

> due to Plaintiff's then[–]willingness to speak "Truth to Power"
> when she informed Defendant Lynea Lemke, on October 15, 2012,
> that her Defendants First Students and the Union's racially
> motivated decision . . . to unlawfully terminate her, all, was based
> on a mistaken identification [of] her (i.e., based on historical
> stereotypes that "all blacks look alike") and or based entirely on the
> false, fraudulent, highly misleading, and uncorroborated allegations
> of a "white" woman.

(*Id.*, ¶ 19.)

Having carefully reviewed and liberally construed these allegations, the Court finds that

Plaintiff has failed to allege facts plausibly suggesting that SCSD infringed upon constitutionally

protected speech. Specifically, Plaintiff's allegations relate to her disciplinary proceedings,

which are matters of personal interest and not ones of public concern. *See Wetzel v. Town of*

*Orangetown*, 308 F. App'x 474, 477 (2d Cir. 2009) (affirming dismissal of police officer's First

Amendment claim alleging she was prohibited from speaking with Town officials about

disciplinary proceedings against her because "those proceedings are a matter of personal interest,

not a matter of public concern"). In other words, "it is clear that plaintiff's speech related

primarily if not exclusively to her desire to protect her job and/or her reputation as a [bus driver].

Any motivation to advance a public interest was tenuous and incidental. *Hanig*, 384 F. Supp. 2d at 722 (citing *Ezekwo v. N.Y. City Health & Hosps. Corp.*, 940 F.2d 775, 781 [2d Cir. 1991] [noting that the fact that plaintiff's speech could be broadly construed to implicate matters of potential public concern did not alter the general nature of her statements which were personally motivated]).

Accordingly, Plaintiff has failed to allege facts plausibly suggesting a violation of her First Amendment rights, and her proposed claim is therefore futile.

### 2. Fifth Amendment

As an initial matter, Plaintiff does not assert allegations in the body of her Complaints specifically referencing violations of her Fifth Amendment rights. However, at the conclusion of Plaintiff's PAC, she alleges, in a footnote, that Defendant(s)

> failed and/or refused to show me, and/or provide to me, the original and/or copy of the alleged complaining individual's sworn statement in these matters (i.e., the "grandmother" of the male child) proving that the [SCSD] had, in fact (1) received a complaint call from the "grandmother," (2) that the identity of the alleged person that called (said grandmother) was confirmed by the [SCSD] person that received said call and, finally, (3) that the receiving School district official then reduced said complaint call, in writing, and then, thereby, filed and/or preserved said telephone complaint form in the School district's official complaint files and/or (via fax, or mailed) filed said written complaint with Defendant First Student.

(Dkt. No. 26, at 14.) Plaintiff alleges that these failures constitute several violations of her constitutional rights, including the Fifth Amendment. (*Id.*) The Court liberally construes these allegations as violations of Plaintiff's due process rights under the Fifth and Fourteenth Amendments. However, Plaintiff's allegations fail to plausibly suggest a violation of her due

process rights. "While the filing of grievances is constitutionally protected, the manner in which grievance investigations are conducted do not create a protected liberty interest." *Odom v. Poirier*, 99-CV-4933, 2004 WL 2884409, at *10 (S.D.N.Y. Dec. 10, 2004); *Hamzik v. Office for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 280 (N.D.N.Y. 2012) (holding that "an employment grievance process is not a fundamental liberty interest protected by the due process clause"); *Smith v. Hogan*, 10-CV-1025, 2011 WL 4433879, at *8 (D. Conn. Sept. 22, 2011). "Similarly, to the extent Plaintiff claims a property, rather than liberty interest[,] in the grievance hearing or his employment, [she] does not allege a property interest cognizable under the due process clause." *Smith*, 2011 WL 4455879, at *8; *see also McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("An interest that can be terminated 'at the whim of another person' is not protected by the Due Process clause."); *Rivera v. Cty. Sch. Dist. Nine*, 145 F. Supp. 2d 302, 306-07 (S.D.N.Y. 2001) ("Where there is no property interest in the employment, there can be no property interest in the procedures that follow from the employment.").

Therefore, Plaintiff has failed to allege facts plausibly suggesting a violation of her constitutional rights under the Fifth Amendment.

### 3. Ninth Amendment

Plaintiff has failed to allege facts plausibly suggesting a violation of her Ninth Amendment rights. The Ninth Amendment provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. The Ninth Amendment, however, is "a rule of construction" and does not give rise to "individual rights." *Jenkins v. C.I.R.*, 483 F.3d 90, 92 (2d Cir. 2007) ("The Ninth

Amendment is not an independent source of individual rights; rather, it provides a rule of construction that [courts] apply in certain cases."). "Therefore, although the Ninth Amendment may provide the basis for recognition of un-enumerated rights, which themselves may be enforceable against a State under the Due Process Clause of the Fourteenth Amendment, the Ninth Amendment itself provides no substantive right." *Palmieri v. Town of Babylon*, 06-CV-0968, 2008 WL 3155153, at *17 (E.D.N.Y. Aug. 4, 2008); *see also Williams v. Perry*, 960 F. Supp. 534, 540 (D. Conn. 1996) (holding that "a § 1983 claim based upon rights derived from the Ninth Amendment in and of itself, fails to state a claim upon which relief can be granted"); *accord*, *Jendrzejczak v. Williams*, 13-CV-1239, 2014 WL 2533041, at *13 (N.D.N.Y. June 5, 2014) (Suddaby, J.). Thus, to the extent that Plaintiff is alleging an independent violation of the Ninth Amendment, she has failed to state claim upon which relief can be granted.

### 4. Thirteenth Amendment

The Court agrees with Defendant for the reasons stated by Defendant in its memorandum of law (Dkt. No. 31, Attach. 1, at 10-11 [Def.'s Mem. of Law]), that Plaintiff's Thirteenth Amendment claim is futile. "To sustain a claim under the Thirteenth Amendment, a plaintiff must 'demonstrate he has been subjected to compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.'" *Jones v. City Sch. Dist. of New Rochelle*, 695 F. Supp. 2d 136, 148 (S.D.N.Y. 2010) (quoting *Ford v. Nassau Cty. Exec.*, 41 F. Supp. 2d 392, 400-01 [E.D.N.Y. 1999]). Because Plaintiff has failed to allege facts plausibly suggesting that she was forced into labor, she has failed to state a claim upon which relief can be granted.

### 5.    Fourteenth Amendment

To set forth a claim for violation of her Fourteenth Amendment right to equal protection, a plaintiff must allege the following: (1) that she was treated differently from others who were similarly situated; and (2) that the differential treatment was motivated by discriminatory animus, to punish or inhibit her exercise of constitutional rights, or with malicious and bad faith intent to cause injury. *Spencer*, 734 F. Supp. 2d at 318 (citing *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 [2d Cir. 2004]); *Dorcely v. Wyandanch Union Free Sch. Dist.*, 665 F. Supp. 2d 178, 194 (E.D.N.Y. 2009).

Here, Plaintiff does not allege instances in her PAC where *similarly situated* employees were treated differently than her.  (Dkt. No. 26, ¶¶ 34, 16.)  As an initial matter, Plaintiff appears to allege that the Equal Protection claim in her PAC is premised on a "class of one."  (Dkt. No. 33, at 6-7 [Dkt. No. 26, ¶ 19; Pl.'s Opp'n Mem. of Law].)  This claim fails as a matter of law because "[t]he Supreme Court recently held that the Equal Protection Clause does not apply to a public employee asserting a violation of the Clause based on a 'class of one' theory of liability." *Appel v. Spiridon*, 531 F.3d 138, 139 (2d Cir. 2008) (citing *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 [2008]); *Fierro v. New York City Dept. of Educ.*, 994 F. Supp. 2d 581, 591 (S.D.N.Y. 2014).

Moreover, with respect to Plaintiff's allegation that she was treated differently from other white bus drivers, she alleges that she suffered injury by "finding out recently that she, as a black female . . . was intentionally, and/or purposefully, treated differently by Defendants from other similarly situated accused 'white' school bus drivers whereby the difference in treatment amount to 'white' school bus drivers accused of misconduct, all, are able to by-pass being discharged."

(Dkt. No. 26, ¶ 34.)  Plaintiff is required to plead "more than a bare allegation that other [individuals] were treated differently" to survive a motion to dismiss.  *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 604 (S.D.N.Y. 2010) (citations omitted). Plaintiff has failed to meet this requirement by neglecting to provide any relevant details, such as specifics regarding the other bus drivers' positions, the nature of the alleged misconduct involved, the extent to which they were at fault, and what findings and/or discipline resulted, if any.  *See Colandrea v. Town of Orangetown*, 490 F. Supp. 2d 342, 349 (S.D.N.Y. 2007) ("Plaintiff's equal protection claim here fails because the complaint fails to allege any similarly situated class of persons with respect to whom she was treated differently."); *O'Bradovich v. Vill. of Tuckahoe*, 325 F. Supp. 2d 413, 431 (S.D.N.Y. 2004) (dismissing equal protection claim where "complaint does not allege that Plaintiffs were similarly situated compared to the other citizens who were" treated differently); *Ruston v. Town Bd. for the Town of Skaneateles*, 06-CV-927, 2008 WL 5423038, at *6 (N.D.N.Y. Dec. 24, 2008) (Scullin, J.) (dismissing an action for failure to state a claim where plaintiff included only a bare allegation of selective enforcement, noting that "[t]his single allegation is insufficient to state a claim that Defendant Village treated others, with a high degree of similarity to Plaintiffs, differently").

Accordingly, Plaintiff has failed to plead facts plausibly suggesting a claim under the Fourteenth Amendment with respect to the SCSD defendants.

### 6.  Municipal Liability Under 42 U.S.C. § 1981

"When the defendant is a state actor, Section 1983 is the exclusive remedy for violations of rights guaranteed under Section 1981." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 576 (S.D.N.Y. 2011); *accord*, *Greene v. Brentwood Union Free Sch. Dist.*, 966 F. Supp. 2d 131,

166 (E.D.N.Y. 2013).  "For purposes of § 1983, school districts are considered to be local governments and are subject to similar liability as local governments under *Monell*." *Dzugas-Smith v. Southold Union Free Sch. Dist.*, 08-CV-1319, 2012 WL 1655540, at *20 (E.D.N.Y. May 9, 2012).  "A school district's liability under *Monell* may be premised on any of three theories: (1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a 'final policymaker.'" *Hurdle v. Bd. of Educ. of City of New York*, 113 F. App'x 423, 424-25 (2d Cir. 2004) (quoting *Lytle v. Carl*, 382 F.3d 978, 982 [9th Cir. 2004]).

"Official policy traditionally takes the form of an 'ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers.'" *Chin v. New York City Hous. Auth.*, 575 F. Supp. 2d 554, 561 (S.D.N.Y. 2008) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 [1978]).  "[A] qualifying custom consists of a 'longstanding practice' that 'constitutes the 'standard operating procedure' of the local governmental entity.'" *Chin*, 575 F. Supp. 2d at 561 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 [1989]).  However, "[t]o show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation . . . [i]t is sufficient to show, for example, that a discriminatory practice of municipal officials was so 'persistent or widespread' as to constitute 'a custom or usage with the force of law . . . or that a discriminatory practice of subordinate employees was 'so manifest as to imply the constructive acquiescence of senior policy-making officials.'" *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) (quotations omitted).  "A policy, custom, or practice may also be inferred where 'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Patterson*,

375 F.3d at 226 (quoting *Kern v. City of Rochester*, 93 F.3d 38, 44 [2d Cir. 1996]). "Liability of a municipal defendant or an individual sued in his official capacity under § 1981 and § 1983 cannot, however, be premised on a theory of *respondeat superior*." *Id.*

In the present case, Plaintiff alleges in her PAC that SCSD, and the proposed defendants employed by SCSD, acted "under the direction of his/her superior(s), via an official policy and/or custom . . . to engage in and cause Plaintiff to be denied her rights, privileges, and/or immunities as mandated in Defendants [sic] First Student[']s National Employee Handbook." (Dkt. No. 26, ¶ 6.) This allegation, as well as the remaining allegations in Plaintiff's PAC, are generalized and insufficient to show discriminatory policies or customs. As discussed above in Part III.D.5. of this Decision and Order, Plaintiff has made only conclusory allegations regarding disparate treatment in her PAC and has failed to allege other instances of discriminatory conduct tending to show that a discriminatory practice of SCSD officials was so "persistent or widespread" as to constitute "a custom or usage with the force of law." *See Littlejohn v. City of New York*, 14-CV-1395, 2015 WL 4604250, at *11 (2d Cir. 2015) (holding that "[plaintiff] does not allege a persistent or widespread municipal policy or 'custom . . . with the force of law' that enabled the discrimination against her–i.e., her demotion–other than general and conclusory allegation that there was such a policy"); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."); *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.") (plurality opinion).

Moreover, Plaintiff's PAC fails to allege that an employee with final decision-making authority engaged in racial discrimination. Rather, Plaintiff has asserted only conclusory allegations with respect to possible involvement by a policymaker. Similarly, Plaintiff's bare assertion "[t]hat Defendants failed to properly train each and/or every agent and/or subordinate employee of Defendants" (Dkt. No. 26, ¶ 10) falls well short of pleading facts plausibly suggesting deliberate indifference to constitutional rights. *See Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 540 (S.D.N.Y. 2012) (collecting cases); *Johnson v. City of New York*, 06-CV-9426, 2011 WL 666161, at *4 (S.D.N.Y. Feb. 15, 2011) (holding that complaint that "contain[ed] only an unsupported conclusory allegation that the City failed to train the individual Defendants" could not withstand a motion to dismiss because plaintiff did not plead any facts that "plausibly allege[d] a specific deficiency in the training or supervision program").

### 7. Individual Liability of the Proposed SCSD Defendants Under 42 U.S.C. § 1981

"An individual may be held liable under §§ 1981 and 1983 only if that individual is 'personally involved in the alleged deprivation.'" *Littlejohn*, 2015 WL 4604250, at *10 (quoting *Back v. Hasting on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 [2d Cir. 2004]). Personal involvement can be established by showing that

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy of custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

43

*Id.* (citing *Back*, 365 F.3d at 127). "The plaintiff is required to make this showing for each particular defendant's personal involvement in the alleged violation." *Tardd v. Brookhaven Nat'l Lab.*, 407 F. Supp. 2d 404, 412 (E.D.N.Y. 2006); *Stevens v. New York*, 691 F. Supp. 2d 392, 401 (S.D.N.Y. 2009) (noting that plaintiff "must assert personal involvement of each of the individual defendants in order to proceed with claims based on § 1981"). "In addition to satisfying one of these requirements, a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation. Finally, as with individual liability, in the § 1983 context, a plaintiff must establish that a supervisor's behavior constituted intentional discrimination on the basis of a protected characteristic . . . ." *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) (citations omitted).

Here, the PAC does not allege facts plausibly suggesting the necessary personal involvement or direct participation of proposed defendants Sharon Contreas and Haine Alica. Specifically, Plaintiff fails to allege what conduct, if any, they engaged in that resulted in a deprivation of Plaintiff's rights. Ms. Contreas and Ms. Alica are referenced in the PAC only when Plaintiff groups them together with other proposed defendants that allegedly violated her rights. Plaintiff does not allege facts plausibly suggesting that Ms. Contreas and/or Ms. Alica directly participated in unconstitutional conduct, that they were aware of it but failed to remedy the misconduct, that they created a policy or custom that led to this conduct, or that they were grossly negligent or exhibited deliberate indifference. (Dkt. No. 26, ¶¶ 14, 20, 27.) Because Plaintiff has not alleged the specific personal involvement of these proposed defendants, her claim as to them cannot withstand a motion to dismiss. *See Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (dismissing claims against defendants where "the complaint [w]as

entirely devoid of any allegations of their personal involvement in" the alleged deprivations of rights and plaintiff had "failed to allege . . . that the defendants were directly and personally responsible for the purported unlawful conduct."); *Davis v. Cty. of Nassau*, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005) ("A complaint that essentially regurgitates the relevant 'personal involvement' standard, without offering any facts indicating that, or how, an individual defendant in a supervisory role was personally involved in a constitutional violation, cannot withstand dismissal."); *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (internal quotations omitted).

Plaintiff's allegations regarding Patricia Bailey are a closer call. Specifically, Plaintiff alleges that Ms. Bailey met and spoke with the proposed defendants before deciding to remove Plaintiff from all SCSD bus routes and placing her on administrative leave. (Dkt. No. 26, ¶.) As discussed above in Part III.A. of this Decision and Order, Ms. Bailey also signed Plaintiff's termination letter. Courts in this Circuit have found personal involvement to exist under similar circumstances. *See*, *e.g.*, *Pinero v. Long Island State Veterans Home*, 375 F. Supp. 2d 162, 169 (E.D.N.Y. 2005) (finding defendant was personally involved where the complaint alleged that "[defendant] was the individual that signed the letter that informed [plaintiff] that she would not be reinstated. The complaint also generally alleges that [defendant] was personally involved in the decision to terminate the Plaintiff"); *Duse v. IBM Corp.*, 748 F. Supp. 956, 968 (D. Conn. 1990) (finding genuine issue of fact where a dispute existed regarding whether supervisor did more than just sign a termination letter). On the other hand, courts have also held that "[i]nvolvement in discussions that lead to a decision is not personal involvement under § 1983."

*Conklin v. Cty. of Suffolk*, 859 F. Supp. 2d 415, 441 (E.D.N.Y. 2012) (quoting *Zdziebloski v. Town of E. Greenbush, N.Y.*, 336 F. Supp. 2d 194, 202 [N.D.N.Y. 2004]).

Notwithstanding the close issue of personal involvement, Plaintiff has failed to allege facts plausibly suggesting Ms. Bailey's intent to discriminate against Plaintiff on the basis of her race. "To survive a motion to dismiss [under § 1981], the plaintiff must specifically allege events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Williams v. New York City Hous. Auth.*, 05-CV-2750, 2007 WL 4215876, at *4 (S.D.N.Y. Nov. 30 2007) (internal quotations omitted). "Naked assertions of race discrimination, without any supporting facts, are insufficient to state a Section 1981 claim." *Fouche v. St. Charles Hosp.*, 65 F. Supp. 3d 452, 457 (E.D.N.Y. 2014). As discussed above in Part III.A. of this Decision and Order, Plaintiff's employment was terminated when it was found that she had gone to a student's home on her bus route while off-duty, which Plaintiff has admitted to doing in her pleadings. Plaintiff alleges that the true basis for her termination was because of her race and being mistaken for another African-American female who also went to the home and made threatening statements. Plaintiff, however, has not pled any facts plausibly suggesting that Ms. Bailey terminated her employment on this basis. *See Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) (finding the "naked allegation that [the defendants] 'selectively enforced the College rules against plaintiffs because they are black or Latin' to be "too conclusory to survive a motion to dismiss"); *Hines v. F.J.C. Sec. Co.*, 96-CV-0263, 1998 WL 60967, at *3 (S.D.N.Y. Feb. 13, 1998) (concluding that "[t]he bare assertion that [the] [d]efendants denied [the] [p]laintiff access to the government building" because of the plaintiff's skin color, "without any specific allegation of a casual link between the [d]efendants' conduct

and the [p]laintiff's race, too conclusory to withstand a motion to dismiss").

As stated in *Fouche*, *supra*, "the Plaintiff's bald assertions of discrimination–unsupported by any meaningful comments, actions, or examples of similarly–situated persons outside of Plaintiff's protected class being treated differently–are insufficient to survive a motion to dismiss." *Fouche*, 64 F. Supp. 3d at 457. Accordingly, Plaintiff's proposed claims against the proposed SCSD defendants under § 1981 cannot withstand a motion to dismiss and are therefore futile.

### 8.     42 U.S.C. §§ 1983, 1985(2)-(3), and 1986

"Section 1983 is not itself a source of substantive rights[,] but merely provides a method for vindicating federal rights elsewhere conferred[.]" *Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689 [1979]). A plaintiff asserting a § 1983 conspiracy claim must first successfully allege a violation of the underlying constitutional right. *See Clark v. City of Oswego*, 03-CV-0202, 2007 WL 925724, at *7 (N.D.N.Y. Mar. 26, 2007) (citing *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 [2d Cir. 1995]).

As discussed above, Plaintiff has failed to allege facts plausibly suggesting that the proposed SCSD defendants violated her constitutional rights. As such, Plaintiff cannot state a claim under § 1983 because she has not successfully alleged a violation of an underlying constitutional right. Furthermore, because Plaintiff cannot state a conspiracy claim under § 1983, Plaintiff cannot state a conspiracy claim under § 1985(2)-(3). *See Nasca v. Cty. of Suffolk*, 05-CV-1717, 2008 WL 53247, at *8 n.8 (E.D.N.Y. Jan. 2, 2008) (holding that "Plaintiff's conspiracy claim under 42 U.S.C. § 1985 must also fail because there is no underlying Section

1983 violation"). Finally, "[h]aving failed to state a cause of action under § 1985, plaintiff has also failed to state a claim under § 1986." *Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir. 1978); *see also Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) ("A claim under section 1986 . . . lies only if there is a viable conspiracy claim under 1985.").

Therefore, Plaintiff has failed to state a claim against the SCSD defendants under 42 U.S.C. §§ 1983, 1985(2)-(3), and 1986 upon which relief can be granted.

E.    **Whether Plaintiff Has Alleged Facts Plausibly Suggesting that Defendant, Local 182, and the Remaining Proposed Defendants Not Acting Under Color of State Law, Conspired to Violate Her Civil Rights Under § 1985(3)**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Defendant in its memorandum of law.  (Dkt. No. 31, Attach. 1, at 8-10 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

To survive a motion to dismiss a conspiracy claim under § 1985(3), a plaintiff must allege facts plausibly suggesting the following four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  *Thomas v. City of New York*, 12-CV-5061, 2013 WL 3810217, at *5 (E.D.N.Y. July 23, 2013) (quoting *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 828-29 [1983]); *Turkmen v. Hasty*, 789 F.3d 218, 262 (2d Cir. 2015).  In addition, a plaintiff must allege that the conspiracy is "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Thomas*, 2013 WL 3810217, at *5 (quoting *Britt v. Garcia*, 457 F.3d 264, 270, n.4 [2d Cir. 2006] [internal quotation

48

marks omitted]).  Because § 1985 has no state action requirement, a claim of conspiracy may be viable against private entities or individuals.  *Thomas*, 2013 WL 3810217, at *5 n.5.  Finally, "section 1985 conspiracy claims are held to a heightened pleading standard." *Van Dunk v. St. Lawrence*, 604 F. Supp. 2d 654, 663 (S.D.N.Y. 2009) (citing *Leon v. Murphy*, 988 F.2d 303, 311 [2d Cir. 1993]).

For the reasons discussed above in Part III.C. of this Decision and Order, Plaintiff has failed to allege facts plausibly suggesting a conspiracy.  Once again, Plaintiff's Complaint and PAC are devoid of any allegations of instances of conduct plausibly suggesting any "meeting of the minds" beyond the proposed defendants communicating about Plaintiff's case and/or the complaint lodged against Plaintiff by the student's grandmother.  As discussed above, these communications, in and of themselves, and without alleging specific facts supporting a concerted effort or plan between the parties, are insufficient to plausibly suggest conspiratorial conduct.  For these reasons, Plaintiff's conspiracy claims against Defendant, Local 182, and the remaining proposed defendants employed by these parties are dismissed.  Furthermore, as discussed above in Part III.D.6. of this Decision and Order, because Plaintiff has failed to state a claim under § 1985, Plaintiff cannot state a claim under § 1986 upon which relief can be granted.

### F. Whether Plaintiff's Proposed Claim Under § 1982 Is Futile

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendant in its memorandum of law.  (Dkt. No. 31, Attach. 1, at 11-12 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

"Courts have consistently held that Section 1982, which by its terms governs property rights, does not create an employment discrimination cause of action." *Bailey v. New York City*

49

*Dept. of Transp.*, 93-CV-1121, 1997 WL 26290, at *3 (S.D.N.Y. Jan. 22, 1997).  Instead, "section 1982 has been held to apply only to real and personal property rights." *Bailey*, 1997 WL 26290, at *3 (citing *Abel v. Bonfanti*, 625 F. Supp. 263, 269 [S.D.N.Y. 1985]).  "As such, Section 1982 has no application to claims of employment discrimination 'where [p]laintiff's job did not constitute real or personal property.'" *Crodell v. Unisys Corp.*, 66 F. Supp. 3d 363, 364 (W.D.N.Y. 2014) (quoting *Faulkner v. Niagara Mohawk Power Corp.*, 05-CV-0974, 2006 WL 3207815, at *8 [N.D.N.Y. Nov. 3, 2006]).

Here, Plaintiff has not identified any real or personal property interests in her pleadings.  Rather, she references injury to her property interests generally and as it relates to her employment discrimination claims.  (Dkt. No. 26, ¶ 11, 16 [Pl.'s Am. Compl.].)  Therefore, Plaintiff's proposed claims alleging violations under Section 1982 are futile.

### G.     Whether Plaintiff's Proposed Claim Under § 1988 Is Futile

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendant in its memorandum of law.  (Dkt. No. 31, Attach. 1, at 12 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

"Section 1988 allows a prevailing party, in certain cases, to seek reimbursement for reasonable attorney's fees." *Whitehurst v. 230 Fifth, Inc.*, 11-CV-0767, 2011 WL 3163495, at *7 (S.D.N.Y. July 26, 2011) (citing 42 U.S.C. § 1988[b]).  "Section 1988 also provides that where there are gaps in federal law with respect to the availability of suitable remedies for civil rights violations, the courts should look to state law insofar as it is not inconsistent with federal law." *Valley Disposal, Inc. v. Cent. Vt. Solid Waste Mgmt. Dist.*, 113 F.3d 357, 362 (2d Cir. 1997) (citing 42 U.S.C. § 1988[a]).  However, "§ 1988 does not provide an independent cause of

action." *Weiss v. Violet Realty, Inc.*, 160 F. App'x 119, 120 (2d Cir. 2005); *Alston v. Sebelius*, 13-CV-4537, 2014 WL 4374644, at *19 (E.D.N.Y. Sept. 2, 2014).  In other words, "§ 1988 defines procedures under which remedies may be sought in civil rights actions, but it does not create independent causes of action." *Brown v. Reardon*, 770 F.2d 896, 907 (10ᵗʰ Cir. 1985); *see also Valley Disposal, Inc. v. Cent. Vt. Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1057 (2d Cir. 1995) ("[A] request for attorney's fees under § 1988 raises legal issues collateral to the main cause of action.").

In the present case, Plaintiff has failed to allege facts plausibly suggesting that available federal statutes are inadequate to remedy the alleged violations of her civil rights.  Moreover, Plaintiff cannot maintain an independent cause of action under § 1988 even if she prevails in any part of this action, which would entitle her to attorneys' fees.  *See Whitehurst*, 2011 WL 3163495, at *7.  Accordingly, Plaintiff's proposed cause of action under § 1988 is futile.

**H.  Whether Plaintiff's Discrimination Claim Under the New York State Human Rights Law, as Alleged in the Original Complaint, Is Barred by the Election-of-Remedies Provision**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendant in its memorandum of law.  (Dkt. No. 31, Attach. 1, at 12-13 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

Section 297(9) of the New York Human Rights Law provides that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction."  However, "[a]fter the [State Division of Human Rights] renders a decision on a charge of discrimination, a plaintiff's only recourse is to 'appeal that decision to the Supreme Court of the State of New York.'" *Russell v. Aid to Developmentally Disabled, Inc.*, 12-

51

CV-0389, 2013 WL 633573, at *13 (E.D.N.Y. Feb. 20, 2013) (quoting *Ganthier v. N. Shore-Long Island Jewish Health Sys., Inc.*, 345 F. Supp. 2d 271, 282 [E.D.N.Y. 2004]). The statute provides an exception to the election-of-remedies rule when the charge filed with the State Division of Human Rights ("SDHR") is dismissed for the following reasons: "(1) the agency has dismissed the complaint for administrative convenience; (2) there is untimeliness on the part of the agency; or (3) the claimant's election of an administrative remedy is annulled." *Brown v. New York State Dept. of Corr. Servs.*, 583 F. Supp. 2d 404, 414 (W.D.N.Y. 2008). Otherwise, the HRL "require[s] dismissal of a suit in court if the complainant lodges a complaint with . . . [SDHR]. This bar applies in federal as well as state court." *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011) (citing *York v. Ass'n of the Bar of City of N.Y.*, 286 F.3d 122, 127 [2d Cir. 2002]).

Here, Plaintiff filed an administrative complaint with the SDHR on October 31, 2012. (Dkt. No. 31, Attach. 2, at Ex. B [Novich Decl.].) Defendant has attached the determination of the SDHR to its memorandum of law, of which the Court may take judicial notice on the current motion. *See Evans v. New York Botanical Garden*, 02-CV-3591, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002) ("A court may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment.") (collecting cases).[12] Following an investigation, the SDHR determined that there was no probable cause "to believe that [First Student] has engaged in or is engaging in the unlawful discriminatory practice complained of." (Dkt. No. 31, Attach. 2, at Ex. B.)

_____

[12] In addition, Plaintiff references the fact that she filed an administrative complaint in her PAC (Dkt. No. 26, at 3) and here original Complaint (Dkt. No. 1, ¶ 8). Therefore, the Court may review the SDHR's determination because it has been incorporated by reference.

Therefore, because Plaintiff's administrative claim was not dismissed under any of the exceptions to the election-of-remedies provision, Plaintiff's discrimination claim under the HRL is barred, pursuant to New York Executive Law § 279(9).  *See Janneh v. Regal Entm't Grp.*, 07-CV-0079, 2007 WL 2292981, at *1 (N.D.N.Y. Aug. 6, 2007) (McAvoy, J.); *Guardino v. Vill. of Scarsdale Police Dep't*, 09-CV-8599, 2011 WL 4000999, at *2 (S.D.N.Y. Sept. 6, 2011) ("When the [SDHR] has issued a finding of no probable cause . . . plaintiff's claims . . . are barred by the law['s] election of remedies provisions because [plaintiff] has already litigated the claims before the [SDHR].").

Finally, although Plaintiff alleges in her PAC that she received a right-to-sue letter from the SDHR (Dkt. No. 26, at 3), "[t]hat has nothing to do with the election-of-remedies provision, which bars plaintiff's HRL claims in this action." *Brown*, 583 F. Supp. 2d at 414 (citing *Janneh*, 2007 WL 2292981, at *1).  Accordingly, Plaintiff's discrimination claim under the HRL against Defendant is dismissed for lack of subject-matter jurisdiction.

### I.     Whether Plaintiff's Cause of Action Under 42 U.S.C. § 1981 Against the Individual Proposed Defendants, Except for SCSD, Is Futile

After carefully considering the matter, the Court answers this question in the affirmative for the reasons discussed below.

Contrary to employment discrimination claims brought under Title VII, which may be brought only against the employer, "individuals may be held liable under § 1981." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74-75 (2d Cir. 2000).  Furthermore, § 1981 "covers racially, discriminatory acts of private individuals and corporations because there is no 'state action' requirement." *Harvey v. NYRAC, Inc.*, 813 F. Supp. 206, 209 (E.D.N.Y. 1993).

However, "in order to make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action." *Whidbee*, 223 F.3d at 75 (internal quotations omitted). Therefore, "[a] claim seeking personal liability under section 1981 must be predicated on the actor's personal involvement." *Id.*

"A § 1981 claim requires plaintiff to allege: (1) that he is a member of a racial minority; (2) that defendants had an intent to discriminate against him on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute, namely make and enforce contracts, sue and be sued, give evidence, etc." *Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 159 (S.D.N.Y. 2006). "In order to survive a motion to dismiss a section 1981 claim, a 'plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent.'" *Odom v. Columbia Univ.*, 906 F. Supp. 188, 194 (S.D.N.Y. 1995) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 [2d Cir. 1994]).

Here, Plaintiff's claims against proposed defendants Frank Luciano, Matt Conti, Ty Worrell, John/Jane Doe (C.E.O./President of First Student), John/Jane Doe (Investigator), and Jimmie James fail for the same reasons discussed above in Part III.D.7. of this Decision and Order. Specifically, Plaintiff has failed to sufficiently allege the personal involvement of these proposed defendants and facts plausibly suggesting their intent to discriminate against Plaintiff on the basis of her race. Although Mr. James was the one who received the complaint from the student's grandmother, he referred investigation of the matter to First Student. (Dkt. No. 26, at Ex. P/D/-7.) Once the investigation was complete, he then turned the matter over to his Director. (*Id.*) These allegations fail to plausibly suggest that Mr. James' was personally involved and

intended to discriminate against Plaintiff. *See Vega v. Artus*, 610 F. Supp. 2d 185, 199 (N.D.N.Y. 2009) (stating that facility superintendent's act of "referring [plaintiff's] letters to staff for investigation is not sufficient to establish [his] personal involvement").

With respect to proposed defendants Lynea Lemke, James LaGrange, and Gary Krick, Plaintiff has sufficiently alleged facts regarding their personal involvement but has not alleged facts plausibly suggesting their intent to discriminate against Plaintiff. Plaintiff has merely alleged that her employment was terminated on the basis that she is African American without offering any additional support. Indeed, as discussed above in Part III.A. of this Decision and Order, Ms. Lemke told Plaintiff that she was being terminated following investigation of an incident that involved Plaintiff going to a student's home while off-duty, an act to which Plaintiff admits.

Furthermore, Plaintiff has failed to allege facts plausibly suggesting circumstances giving rise to a plausible inference of racially discriminatory intent. For example, Plaintiff alleges that Mr. LaGrange refused to represent her at her grievance hearings after being told that she never submitted a written request that he do so. (Dkt. No. 26, ¶¶ 7, 23.) After being told that Plaintiff requested his representation, Mr. LaGrange allegedly stated "I don't give a damn about [Plaintiff] if you don't put it in writing, it never happened." (*Id.*) These allegations do not raise an inference that Mr. LaGrange refused to represent Plaintiff on the basis of her race. If anything, one could infer that Mr. LaGrange refused to represent Plaintiff because she did not submit a formal written request that he do so, presumably because that is Local 182's policy.

Accordingly, the Court finds that Plaintiff has failed to state a claim under § 1981 upon which relief can be granted.

### J. Whether Plaintiff Has Alleged Facts Plausibly Suggesting a Violation of Her Rights Under Title VII

After carefully considering the matter, the Court answers this question in the negative

with respect to Defendant, Local 182, and SCSD in Plaintiff's PAC. However, for the reasons

discussed below, the Court answers this question in the affirmative with respect to Plaintiff's

Title VII claim against Defendant in her original Complaint.

#### 1. Individuals Defendants

It is well established that "[e]mployers, not individuals, are liable under Title VII."

*Reynolds v. Barrett*, 685 F.3d 193, 292 (2d Cir. 2012); *see also Raspardo*,770 F.3d at 113

(holding that Title VII "does not create liability in individual supervisors and co-workers who are

not the plaintiffs' actual employers"); *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010)

("[T]he remedial provisions of Title VII . . . do not provide for individual liability.").

Accordingly, Plaintiff cannot state a claim under Title VII against the individual proposed

defendants that were employed by Defendant, SCSD, and/or Local 182.

#### 2. Requirements to State a *Prima Facie* Claim Under Title VII

"The substantive standards applicable to claims of employment discrimination under Title

VII . . . are also generally applicable to claims of employment discrimination under § 1981 . . . ."

*Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).[13]

---

[13]     "The primary doctrinal differences between Title VII claims and employment discrimination claims pursuant to Section 1981 and 1983 regard (1) the statute of limitations, (2) the requirement that Section 1981 or 1983 plaintiffs must show employment discrimination pursuant to an official policy or custom, (3) that *individuals* may be held liable under Sections 1981 and 1983, but not under Title VII, and (4) a Title VII claim *may be* established through proof of negligence, whereas Section 1981 and 1983 claims must be supported by evidence of intentional discrimination." *Jackson v. City of New York*, 29 F. Supp. 3d 161, 170 n.10 (E.D.N.Y. 2014).

In *Littlejohn*, the Second Circuit recently stated that

> while the plaintiff ultimately will need evidence sufficient to prove discriminatory motivation of the part of the employer-defendant, at the initial stage of the litigation–prior to the employer's coming forward with the claimed reason for its action–the plaintiff does not need substantial evidence of discriminatory intent. If she makes a showing (1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation, then she has satisfied the prima facie requirements and a presumption of discriminatory intent arises in her favor, at which point the burden of production shifts to the employer, requiring that the employer furnish evidence of reasons for the adverse action.

*Littlejohn*, 2015 WL 4604250, at *7. The Court further stated that "[t]he facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation. The facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Id.* at *8.

"An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Id.* (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 [2d Cir. 2009]).

### 3. Proposed Title VII Claim Against the Proposed Defendants in Plaintiff's PAC

Despite the low threshold for stating a claim under Title VII, the Court finds that Plaintiff has not alleged facts plausibly suggesting a minimal inference of discriminatory motivation. As discussed throughout this Decision and Order, Plaintiff has made only bare and naked allegations that she was subjected to racial discrimination. Accordingly, Plaintiff has failed to state a Title VII claim against the proposed defendants.

### 4. Title VII Claim Against First Student in Plaintiff's Original Complaint[14]

Notwithstanding the failure of Plaintiff's Title VII claim in her PAC, Plaintiff has alleged facts in her original Complaint, which plausibly suggest a minimal inference of discriminatory motivation. Plaintiff has done so through her description of three cases involving white school bus drivers that allegedly received favorable treatment after being investigated for employee misconduct. (Dkt. No. 1, ¶¶ 14-16 [Pl.'s Compl.].) It bears noting that these allegations were absent from Plaintiff's PAC; rather, Plaintiff alleged that she was discriminated against under a "class of one" theory of liability. *See*, *supra*, Part III.D.5. of this Decision and Order.

"[A] showing of disparate treatment 'is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case [under *McDonnell Douglas*].'" *Raspardo*, 770 F.3d at 126 (quoting *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 493 [2d Cir. 2010]). "Raising such an inference, however, requires the plaintiff to show that the employer treated him or her 'less favorably than a similarly situated employee' outside of the protected group." *Id.*

---

[14] The Court notes that the allegation in the original Complaint that there were similarly situated white bus drivers is in no way incorporated in the PAC, because the PAC (if accepted) would supersede the original Complaint in all respects, pursuant to N.D.N.Y. L.R.7.1(a)(4).

"To be 'similarly situated,' the individuals with whom [plaintiff] attempts to compare herself must be similarly situated in all material respects." *Spencer*, 734 F. Supp. 2d at 318-19 (quoting *Shumway v. United Parcel Serv.*, 118 F.3d 60, 64 [2d Cir. 1997]). "Specifically, plaintiff must demonstrate that her 'similar' coworkers were subject to the same performance evaluation and discipline standards, and that they engaged in comparable conduct." *Id.* at 319 (citing *Graham v. Long Island R.R.*, 230 F.3d 34, 39-40 [2d Cir. 2000]). "'[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical.'" *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (quoting *Graham*, 230 F.3d at 40). "Ordinarily, '[w]hether two employees are similarly situated . . . presents a question of fact,' rather than a legal question to be resolved on a motion to dismiss." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (quoting *Graham*, 230 F.3d at 39). However, "the court 'still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated.'" *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013) (quoting *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 697-98 [S.D.N.Y. 2011]).

In the first case involving employee misconduct by a white school bus driver, Plaintiff alleges that the driver was disciplined after dropping a student off at an unauthorized stop approximately six minutes away by foot. (Dkt. No. 1, ¶ 14.) As a result, the bus driver was "placed on administrative leave for several weeks but then allowed to return to work." (*Id.*)

Regarding the second white school bus driver, Plaintiff alleges the second bus driver was operating her school bus with her bus monitor when the bus broke down. (*Id.*, ¶ 15.) The students on the bus were evacuated to a rescue bus that arrived to take them home. (*Id.*) The second bus driver and bus monitor were required to check the bus to ensure that no students remained on the disabled bus before the bus driver drove the disabled bus back to base. (*Id.*) The rescue bus driver was also required to check the disabled bus for students before departing but did not do so because the second bus driver and the bus monitor had not found any students during their sweep of the disabled bus. (*Id.*) Upon returning to base, the rescue bus driver found a sleeping child in the back of the disabled bus. (*Id.*) Plaintiff alleges that the original driver of the disabled bus "was placed on administrative leave, but her monitor a [sic] African American male was terminated immediately." (*Id.*)

Finally, Plaintiff alleges that the third bus driver failed to perform her "sleeping child procedure" and brought two sleeping children back to the bus yard. (*Id.*, ¶ 16.) When the third bus driver discovered that the children were still on the bus, the driver allegedly drove the bus out of the yard without reporting the situation to "safety." (*Id.*) A witness saw the two children on the bus in the bus yard and reported it to management. (*Id.*) According to Plaintiff, the third bus driver "was placed on administrative leave but then allowed to return to work a short period after." (*Id.*)

Plaintiff appears to allege that, in all three cases, the white bus drivers were subject to the same disciplinary policies contained in First Student's National Employee Handbook. (*Id.*) To be sure, Plaintiff's allegations are sparse and lacking certain relevant details, such as the disciplinary proceedings the drivers and the monitor were subjected to and to what extent they

were at fault.  However, more importantly, Plaintiff's allegations that these white bus drivers

engaged in comparable conduct is questionable.  Even affording Plaintiff's Complaint the most

liberal of constructions, the Court is unable to find that it has pled a prima face claim of disparate

treatment based on Plaintiff's race under Title VII, specifically the fourth element of that claim,

which requires an allegation of facts plausibly suggesting that Plaintiff "has at least minimal

support for the proposition that [Defendant] was motivated by discriminatory intent."  *Littlejohn*

*v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).  Assuming the factual allegations of

Plaintiff's Complaint to be true, this is not a case in which Plaintiff points to a white co-worker

who was not fired after engaging in conduct that, while unknown, reasonably appears to have

been comparable to the conduct in which Plaintiff engaged.  Rather, this is a case in which

Plaintiff points to *three* white co-workers who were not fired after engaging in *specifically*

*identified* conduct that *clearly* was of less seriousness than that of Plaintiff.  Simply stated, the

Court cannot find that a bus driver who *accidentally* dropped a child off at an unauthorized stop

(a mere six-minute walk from the child's authorized stop) while on-duty or *accidentally* fails to

sufficiently check a school bus for sleeping children while on-duty (offenses of *omission*) is

comparable to a bus driver who *deliberately* goes to a student's home while off-duty (an offense

of *commission*), or at least sufficiently comparable to indicate discriminatory intent by Defendant

as a result of disparate treatment.  *See Raspardo*, 770 F.3d at 126 (noting that "[i]n the context of

employee discipline . . . the plaintiff and the similarly situated employee must have engaged in

comparable conduct, that is, conduct of comparable seriousness").  Accordingly, Defendant's

cross-motion to dismiss Plaintiff's Title VII claim in her original Complaint is granted.

**IV.    CONCLUSION**

For the reasons stated above, Plaintiff's motion seeking leave to file and serve an Amended Complaint is denied in its entirety.  The Court notes that, in addition to the reasons stated above, Plaintiff has failed to comply with Local Rule 7.1(a)(4), which governs motions to amend pleadings.[15]  The Court notes also that, on August 5, 2013, Plaintiff was provided with a courtesy copy of both the District's Local Rules of Practice and *Pro Se* Handbook.  (Dkt. No. 4.)  In addition, for the reasons stated above, Defendant's cross-motion seeking to dismiss Plaintiff's Complaint is granted.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for leave to file and serve an Amended Complaint (Dkt. No. 25) is **<u>DENIED</u>**; it is further

**ORDERED** that Defendant's cross-motion to dismiss Plaintiff's Complaint (Dkt. No. 31) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>** in its entirety with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

Dated:          September 18, 2015
                Syracuse, New York

                                        Hon. Glenn T. Suddaby
                                        Chief, U.S. District Judge

---

[15]        Specifically, Local Rule 7.1(a)(4) states that a motion to amend "must set forth specifically the proposed amendments and identify the amendments in the proposed pleading, either through the submission of a red-lined version of the original pleading or other equivalent means." N.D.N.Y. L.R.7.1(a)(4).  Plaintiff failed to identify her proposed amendments through either means.